IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

OLANDUS CAMPBELL, N4/13-L 440-149,     *

Plaintiff     *

v     *     Civil Action No. PX-18-0020

D.O.C./PATUXENT INST., and     *
DR. CHARLES CHONG-HWA HONG, M.D.[1]
    *
Defendants
    ***

## MEMORANDUM OPINION

Plaintiff Olandus Campbell brings this civil rights action pursuant to 42 U.S.C. § 1983 against the Division of Correction ("DOC") and Patuxent Institution ("Patuxent") (collectively, the "Correctional Defendants") and Charles Chong-Hwa Hong, M.D. ("Dr. Hong"), who provides psychiatric services to prisoners under a contract between his employer and the Maryland Department of Public Safety and Correctional Services ("DPSCS").[2] Campbell, who is housed at Patuxent, contends that Defendants violated his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution by prescribing to him multiple psychiatric medications, causing side effects sufficiently serious to require hospitalization in July of 2017. ECF No. 1 at 4, ECF No. 9 at 1, 2. As damages, Campbell demands $1,000,000. ECF

---

[1] The Clerk shall amend the docket to reflect the full and proper spelling of Dr. Hong's name.

[2] "[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *see* Fed. R. Evid. 201(b)(2); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011); *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Although Dr. Hong does not identify his employer by name, he affirms that the submitted medical records are "maintained by MHM and the health care providers at [Patuxent] in the ordinary course of business." ECF No. 23-2, ¶ 10. This Court takes judicial notice that the DPSCS awarded a mental health care contract to MHM-Maryland, Inc. in 2012 through June 30, 2017. *See* https://dbm.maryland.gov/proc-contracts/Pages/contract-library/DPSCS/inmateMentalHealth.aspx (last reviewed November 26, 2018).

No. 1 at 4.

Presently pending before the Court are Defendants' motions to dismiss or in the alternative for summary judgment in their favor.[3] ECF Nos. 14 and 21. The Court has reviewed the pleadings and finds no hearing necessary. *See* Local Rule 105.6 (D. Md. 2016). For the following reasons, Defendants' dispositive motions are GRANTED.

## I. Factual Background

The following facts are not disputed. On April 26, 2016, shortly after Campbell was transferred to Patuxent, Campbell was evaluated for complaints of auditory homicidal hallucinations. ECF No. 21-1 at 186-187. Campbell also reported suicidal ideation and hallucinations to psychiatrist Saeed Salehinia who prescribed Campbell risperidone[4] and Cogentin.[5] *Id.* at 184. Dr. Salehinia diagnosed Campbell with major depression with recurrent psychosis and noted improvement with the medication. *Id.* at 185. Campbell was thereafter prescribed Paxil[6] in addition to the risperidone and Cogentin. *Id.* at 185.

On June 3, 2016, Dr. Hong met with Campbell. Dr. Hong noted that Campbell had been

---

[3] Consistent with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Court notified Campbell in writing on May 4, 2018 and June 17, 2018 of Defendants' motions and that Campbell was entitled to oppose the motions and submit evidence in support. ECF Nos. 15, 22. The Court will consider Campbell's correspondence (ECF Nos. 16 and 25), together with his "amended complaint," ECF No. 23, as his response to the motions.

[4] Risperidone ("Risperdal") is an atypical antipsychotic given to restore the balance of natural substances in the brain to allow clear thinking and participation in daily life. It is sometimes used to treat mental and mood disorders, including schizophrenia, bipolar disorder, and irritability associated with autism. Side effects may include drowsiness, dizziness, nausea, weight gain, or tiredness. *See* https://www.webmd.com/drugs/2/drug-9846/risperdal-oral/details (last reviewed November 26, 2018).

[5] Cogentin ("benztropine") is an anticholinergic drug used to treat involuntary movements due to the side effects of certain psychotropic medications. It helps decrease muscle stiffness, sweating, and saliva production. Side effects may include drowsiness, dizziness, constipation, flushing, nausea, nervousness, blurred vision, or dry mouth. *See* https://www.webmd.com/drugs/2/drug-13533/cogentin-oral/details (last reviewed November 26, 2018).

[6] Paxil ("paroxetine"), a selective serotonin reuptake inhibitor ("SSRI"), is used to treat depression, panic attacks, or anxiety disorder. Side effects may include nausea, drowsiness, dizziness, trouble sleeping, loss of appetite, weakness, dry mouth, sweating, blurred vision, and yawning. *See* https://www.webmd.com/drugs/2/drug-32900/paxil-cr-oral/details (last reviewed November 26, 2018).

admitted on fifteen prior occasions for psychiatric illnesses and had been previously diagnosed with antisocial and borderline personality disorder and depression. Dr. Hong continued Campbell on Risperdal and Cogentin. Campbell evidently was also taking Prozac,[7] the dosage of which Dr. Hong increased. *Id.* at 182-183. Campbell was also taking Zoloft,[8] the dosage of which Dr. Hong also increased when he next saw Campbell on June 24, 2016. Dr. Hong also prescribed Zyprexa Zydis,[9] and continued Campbell on Risperdal and Cogentin. *Id.* at 181.

Campbell continued to meet regularly with psychiatrists, including Dr. Hong and other staff, over twenty times between June 3, 2016, and July 6, 2017. *See* ECF No. 21-1 at 127-183. Throughout, psychiatric staff adjusted, added, and discontinued Campbell's medications in an effort to treat his psychotic episodes while also managing known side effects.[10] ECF No. 21-1 at 140, 152, 154-157, 159, 161, 163, 165-166, 169-170, 177, 180-181.[11]

---

[7] Prozac ("fluoxetine") is used to treat depression, panic attacks, obsessive compulsive disorder, and certain eating disorders, and may decrease fear, anxiety, and unwanted thoughts. Side effects may include nausea, drowsiness, dizziness, anxiety, trouble sleeping, loss of appetite, tiredness, sweating, or yawning. *See* https://www.webmd.com/drugs/2/drug-6997/prozac-oral/details (last reviewed November 26, 2018).

[8] Zoloft ("sertraline") may improve the mood, sleep, appetite and energy level for those suffering depression, panic attacks, obsessive compulsive disorder, post-traumatic stress disorder, or social anxiety. Side effects may include nausea, dizziness, drowsiness, dry mouth, loss of appetite, increased sweating, diarrhea, upset stomach, or trouble sleeping. *See* https://www.webmd.com/drugs/2/drug-35-8095/zoloft-oral/sertraline-oral/details (last reviewed November 26, 2018).

[9] Zyprexa Zydis ("olanzapine") is an atypical antipsychotic medication used to treat schizophrenia or bipolar disorder and may also be used with other medications to treat depression. It may decrease hallucinations. Side effects may include drowsiness, dizziness, stomach upset, dry mouth, constipation, and increased appetite. *See* https://www.webmd.com/drugs/2/drug-19876/zyprexa-zydis-oral/details (last reviewed November 26, 2018). Atypical antipsychotic medication is used to treat acute and chronic psychoses such as schizophrenia.

[10] Additional medications prescribed at various times included Haldol (used to treat schizophrenia and schizoaffective disorders, *see* https://www.webmd.com/drugs/2/drug-5419/haldol-oral/details and last reviewed November 27, 2018), Inderol (a blood pressure medication, *see* https://www.webmd.com/drugs/2/drug-6840/inderal-oral/details and last reviewed November 27, 2018), and Seroquel ("quetiapine"), an atypical anti-psychotic medication used to treat schizophrenia, bipolar disorder, sudden episodes of mania or depression. *See* https://www.webmd.com/drugs/2/drug-4718/seroquel-oral/details and last reviewed November 27, 2018. ECF No. 21-1 at 156-157, 165, 170, 177-178.

[11] One month before the episode that resulted in hospitalization, Campbell on June 16, 2017 reported his concern that a night nurse had given him the wrong medication that made him feel "high" and dizzy. ECF No. 21-1 at 127. Hong immediately evaluated the situation, found no physical problem, and prescribed a dose of anxiety medication

As of July 6, 2017, Campbell was taking the following five medications:

| Benztropine Mesylate[12] (Cogentin) | Prescribed 03/25/2016 | Previously used 09/19/2008 to 03/31/2010 |
|---|---|---|
| Prozac | Prescribed 05/03/2016 | Previously used 09/19/2008 to 10/27/2010 |
| Vistaril[13] | Prescribed 03/13/2017 | |
| Geodon[14] | Prescribed 12/23/2016 | |
| Abilify[15] | Prescribed 04/04/2017 | |

ECF No. 21 at 8; ECF No. 21-1 at 124-125. Campbell also was receiving medications to control stomach upset (omeprazole and Tums), dry skin (Lubri-skin), nerve pain (Gabapentin[16]), asthma (Qvar[17] and albuterol sulfate Hfa), constipation (colace), dry mouth (Biotene), and other illnesses. *Id.*

On July 6, 2017, Campbell saw Nurse Wung Geh, who noted that Campbell was suffering from body tremors and was confused, disoriented, and unsteady. ECF No. 21-1 at 123-125. Campbell was taken by ambulance to Bon Secours Hospital where he was evaluated and treated.

---

to help Campbell calm down. *Id.*

[12] *See* https://www.webmd.com/drugs/2/drug-8619/benztropine-oral/details (last reviewed November 27, 2018).

[13] Although commonly prescribed to treat itching caused by allergies, Vistaril ("hydroxyzine") may be used short-term to treat anxiety or to help with sleep and relaxation. *See* https://www.webmd.com/drugs/2/drug-6144/vistaril-oral/details (last reviewed November 27, 2018).

[14] Geodon ("ziprasidone") is an atypical antipsychotic used to balance natural brain substances and treat mental/mood disorders such as schizophrenia or bipolar disorder. It can also decrease hallucinations and agitation. *See* https://www.webmd.com/drugs/2/drug-20575/geodon-oral/details (last reviewed November 27, 2018).

[15] Although not identified as a prescribed psychiatric medication in Dr. Hong's dispositive motion (*see* ECF No. 21 at 8), Abilify ("aripiprazole") is an atypical antipsychotic drug. *See* https://www.fda.gov/Drugs/DrugSafety/ PostmarketDrugSafetyInformationforPatientsandProviders/ucm094303.htm (last reviewed November 27, 2018).

[16] Gabapentin ("neurontin") is used with other medications to prevent and control seizures and to relieve nerve pain. *See* https://www.webmd.com/drugs/2/drug-14208-8217/gabapentin-oral/gabapentin-oral/details (last reviewed November 27, 2018).

[17] Qvar ("beclomethasone") is used to prevent and control asthma symptoms. *See* https://www.webmd.com/drugs/2/drug-19972/qvar-inhalation/details (last reviewed November 27, 2018).

Dr. Hong attests that this evaluation included brain and abdominal MRI scans (ECF No. 21-2 at ¶ 9), which Campbell denies. ECF No. 16 at 8, 10. Campbell was admitted to Bon Secours and remained hospitalized until July 9, 2017. *Id.* at 117; ECF No. 21-2 at ¶ 9. On July 22, 2017, having returned to Patuxent, Campbell reported to Dr. Yonas Sisay, M.D. that he felt well. ECF No. 21-1 at 94.

The parties do not dispute that complications from Campbell's having taken multiple medications likely caused the symptoms that led to Campbell's emergency hospitalization. ECF No. 16 at 10-12; *see also* ECF No. 21-1 at 97. As treatment for this adverse reaction, Campbell was taken off most psychotropic medications, and as a result, experienced increased psychotic symptoms including auditory hallucinations. ECF No. 21-1 at 57, 64, 97. Since Campbell's release from Bon Secours until the filing of the Complaint, Campbell has received treatment from mental health specialists on more than 30 occasions. ECF No. 21-1 at 1-125. During that time, Campbell discontinued psychiatric treatment with Dr. Hong and his case was reassigned to another psychiatrist. ECF No. 21-1 at 53; ECF No. 21-2 at ¶ 4.

Campbell contends that he suffered an array of side effects from having been prescribed multiple medicines between April 1, 2017 and August 12, 2017, to include substantial weight loss (28 pounds), lack of appetite, and becoming "grey" and jaundiced. ECF No. 1 at 5. Campbell further avers that Dr. Hong "admitted to my sister that he gave me too much medication two different times," and that Hong knew about Campbell's the loss of appetite. *Id.* at 6-7. Campbell has no memory of his hospitalization at Bon Secours, and disputes such hospitalization occurred, but does believe he was "thrown into a bed at Jessup Regional Hospital (JRH) for 3 days" without sustenance. *Id.* at 7; *see also* ECF No. 16 at 6, ECF No. 23 at 1.

5

## II. Analysis

### A. Standard of Review

The parties have submitted evidence beyond the four corners of the Complaint. Accordingly, the Court treats this motion as one for summary judgment. Fed. R. Civ. P. 12(d). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted if the movant shows that no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original). The non-movant may not rest upon the mere allegations or denials, but rather must demonstrate that a genuine triable issue of fact exists. *See Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir. 2003). The Court must view the evidence in the light most favorable to the nonmovant and draw all inferences in his favor without weighing the evidence or assessing witness credibility. *See Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). Factually unsupported claims and defenses are not to proceed to trial. *Bouchat,* 346 F. 3d at 526.

### B. Claims against Correctional Entities

Campbell seeks to hold Patuxent liable for his allegedly improper medical treatment. Patuxent is a maximum security correctional facility within the DOC administered by DPSCS. Patuxent houses the Correctional Mental Health Center-Jessup which provides psychiatric clinical services to male and female inmates.[18]

---

[18] *See* https://www.dpscs.state.md.us/locations/pat.shtml; *see also* https://www.dpscs.state.md.us/agencies/patuxent.shtml (last reviewed November 26, 2018).

Although Campbell was housed at Patuxent, the facility is not a "person" capable of being sued under § 1983. *See Smith v. Montgomery Cty. Corr. Facility*, No. Civil Action No. PWG-13-3177, 2014 WL 4094963, at *3 (D. Md. Aug. 18, 2014) (holding that Montgomery County Correctional Facility "is an inanimate object that cannot act under color of state law and therefore is not a 'person' subject to suit under Section 1983."); *Preval v. Reno*, 57 F.Supp.2d 307, 310 (E.D. Va. 1999) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."); *Brooks v. Pembroke City Jail*, 722 F.Supp. 1294, 1301 (E.D. N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."). The Court thus finds that Patuxent is not amenable to suit.

As for the DOC, the Eleventh Amendment to the United States Constitution renders the DOC, as an agency of the state, immune from suit. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. Const. Amend XI. Accordingly, the Eleventh Amendment bars suit for damages against a state in federal court absent state waiver or Congressional abrogation. *See Pennhurst State Sch. & Hosp.* v. *Halderman,* 465 U.S. 89, 100-02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."), citing *Florida Dept. of Health v. Florida Nursing Home Assn.,* 450 U.S. 147 (1981) (*per curiam*). Congress did not abrogate the states' Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66 (1989). Nor has Maryland waived

immunity for claims brought against it in federal court. Thus, Campbell's claim for monetary damages against the DOC is barred by the Eleventh Amendment.[19]

### C. Claims against Dr. Hong

As to the constitutional claims against him, Dr. Hong principally argues that he is qualifiedly immune from suit. ECF No. 21 at 18-20. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether a defendant is qualifiedly immune, the court first considers whether the defendant, as a state actor, violated the plaintiff's constitutional rights. If so, the court then considers "whether the right asserted was clearly established at the time of the events at issue." *Miller v. Prince George's Cnty., Md.*, 475 F.3d 621, 626-27 (4th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)); *accord Graham v. Gagnon*, No. 15-1521, 2016 WL 4011156, at *4 (4th Cir. July 27, 2016). The "answer to both [ ] questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds." *Henry v. Purnell*, 501 F.3d 374, 377-78 (4th Cir. 2007) (citing *Batten v. Gomez*, 324 F.3d 288, 293-94 (4th Cir. 2003)) (ellipses in original).

As an initial matter, the Court observes that Dr. Hong, a private health care provider, is likely not entitled to assert the doctrine of qualified immunity. Dr. Hong argues otherwise, contending that under *Filarsky v. Delia*, 566 U.S. 377, (2012), he enjoys qualified immunity because he was retained by the government to assist in a task for which government employees are otherwise employed. *See id.* 566 U.S. at 393-94. The Court need not reach this issue because

---

[19] The DOC alternatively argues Campbell failed to exhaust administrative remedies mandated by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The Court need not reach this ground for dismissal.

even if Dr. Hong could be construed as a state actor, Campbell's right to be free from cruel and unusual punishment via the provision of adequate medical care is a clearly established right. Campbell has put forward sufficient facts viewed most favorably to him to demonstrate that the right at issue was clearly established at the time. The Court, therefore, does not believe summary judgment is warranted on qualified immunity grounds. *See Pearson*, 555 U.S. at 232.

Turning to the merits of the claim, Dr. Hong is entitled to summary judgment nonetheless because Campbell cannot demonstrate that Dr. Hong acted with deliberate indifference amounting to a violation of Campbell's Eighth Amendment rights. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment, *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). *See also De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), citing *Wilson v. Setter*, 501 U.S. 294, 297 (1991) (Eighth Amendment claims are "not limited to those punishments authorized by statute and imposed by a criminal judgment."). To state an Eighth Amendment claim concerning the provision of substandard medical care, a prisoner must demonstrate that the defendant's acts or omissions amounted to deliberate indifference to the prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the defendant was aware of the medical need but failed either to provide needed care or otherwise ensure such care was available. *See Farmer v. Brennan,* 511 U.S. 825, 837 (1994).[20]

A "serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for

---

[20] The law in this respect makes no distinction between physical and psychiatric ailments. *Bowring v. Goodwin*, 551 F.2d 44, 47 (4th Cir. 1977).

9

a doctor's attention." *Iko,* 535 F.3d at 241 (internal quotation marks and ellipses omitted). Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires that the defendant act with "subjective recklessness" in the face of the serious medical condition. *Farmer,* 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer*, 511 U.S. at 844.

Where the requisite subjective knowledge is established, a defendant may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the defendant's actions must be judged in view of the risk actually known to the defendant at the time. *Brown v. Harris,* 240 F. 3d 383, 390 (4th Cir. 2000); *see also Jackson v. Lightsey*, 775 F.3d 170, 179 (4th Cir. 2014).

Importantly, a prisoner does not maintain a constitutional right to receive treatment of his choice. *See Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Disagreements with medical staff over the necessity or extent of certain medical treatment, therefore, cannot sustain an Eighth Amendment claim. *See Estelle*, 429 U.S. at 105-06; *Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985); *Jackson,* 775 F.3d at 178-79; *see also United States v. Clawson,* 650 F.3d 530, 538 (4th Cir. 2011) (difference of opinion regarding the adequate course of psychiatric treatment does not give rise to Eighth Amendment violation). Nor does demonstrated negligence or medical malpractice alone support an inference of deliberate indifference. *Johnson v. Quinones,* 145 F.3d 164, 166 (4th Cir. 1998). Rather, a defendant's treatment or lack thereof rendered to the plaintiff

must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted) (overruled in part on other grounds by *Farmer*, 511 U.S. at 837; aff'd in pertinent part by *Sharpe v. S.C. Dep't of Corr.,* 621 F. App'x 732 (4th Cir. 2015).

It is undisputed that Campbell suffers serious medical conditions, including severe mental illness. It is equally undisputed that Dr. Hong and others rendered significant and ongoing medical treatment, to include administration of several combinations of psychiatric medications, attempting to control Campbell's psychosis, paranoia, auditory hallucinations, and other mental disorders. An unfortunate consequence was Campbell's adverse reaction resulting in his hospitalization. Thereafter, Campbell was treated timely and appropriately. Campbell's medications were stopped for a period of time, and sadly his psychiatric problems, including auditory hallucinations, reemerged. Viewing the tragic facts most favorably to Campbell, no evidence exists that Dr. Hong was deliberately indifferent to Campbell's serious medical needs supporting an Eighth Amendment claim.

To the extent that Campbell seeks to sue Dr. Hong for of state common law claims of medical negligence or malpractice, the Court will not exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367. However, even if the Court exercised supplemental jurisdiction, the claims must nonetheless be dismissed for failure to meet the pre-suit requirements under the Maryland Health Care Malpractice Claims Act ("the Act"), Md. Code Ann., Cts. & Jud. Proc. § 3-2A-01, *et seq*. The Act requires that all medical injury claims seeking significant money damages must be submitted to the Health Care Alternative Dispute Resolution Office ("HCADRO") prior to filing suit. *See id.* at § 3-2A-02; *see also Roberts v. Suburban Hospital Assoc., Inc*., 73 Md. App. 1, 3 (1987); *Davison v. Sinai Hospital of Balt. Inc.*, 462 F. Supp. 778, 779-81 (D. Md. 1978), *aff'd*, 617

11

F.2d 361 (4th Cir. 1980). This requirement applies to medical negligence claims filed in federal court. *See Davison*, 462 F. Supp. at 779-81. Failure to exhaust such claims in HCADRO requires dismissal in this court. *See Roberts,* 73 Md. App. at 6; *see also Davison*, 462 F. Supp. at 781.

At its core, Campbell challenges the adequacy of the medical treatment he received from Dr. Hong and other providers. These claims must first be submitted to HCADRO. Campbell has not yet done so. Accordingly, the Court dismisses the medical negligence claims without prejudice should he wish to submit them to HCADRO.[21]

A separate Order follows.

Date: 12/4/18                               /S/
                                            Paula Xinis
                                            United States District Judge

---

[21] The Court also notes that should Campbell submit his claims to HCADRO and thereafter file suit, this Court may still lack jurisdiction on the claims if both Campbell and any defendant are citizens of Maryland. *See* 18 U.S.C. § 1332. If diversity jurisdiction is lacking, Campbell may still file suit on these claims in state court.